## Case No. 2,673.

### CHILD v. ADAMS et al.

[1 Fish. Pat. Cas. 189;[1] 3 Wall. Jr. 20; 12 Leg. Int. 4.]

Circuit Court, E. D. Pennsylvania. Nov., 1854.

PATENTS — CONSTRUCTION OF STATUTE OF 1836 —
POWER OF COMMISSIONER—FRAUD IN PROCURING
ORIGINAL PATENT—REISSUE.

1. Section 13 of the act of July 4, 1836 [5 Stat. 122], by defining the conditions under which the powers it confers shall be exercised, necessarily excludes it in all other, except, perhaps, the correction of clerical errors.
[Cited in De La Vergne Refrigerating Mach. Co. v. Featherstone, 49 Fed. 917.]

2. Where a statute defines the extent of power given to one who acts ministerially, the courts can not extend it, or validate acts done without or beyond its authority.

3. The commissioner has no power to confirm a patent obtained by false suggestion, either by pardoning the offense or excusing it on the plea of innocent ignorance.

4. If an alien, either through ignorance or intention, falsely represents himself as a citizen in order to obtain a patent, the patent so procured is "inoperative and invalid" to vest a title in the alleged invention.
[Distinguished in Tonduer v. Chambers, 37 Fed. 337.]

5. The oath of citizenship, and other duties required by section 6 of the act of July 4, 1836, are conditions precedent without which the commissioner has no authority to grant a patent, and a defendant may allege the neglect or fraudulent omission to fulfill these conditions, or any of them, as a sufficient defense.

6. M., an alien, made oath that he was a citizen of the United States, and obtained a patent. Eight years afterwards he surrendered his patent, made oath that he was a citizen of France, paid the balance of the fee due the patent office and obtained a reissue, which recited (among other things) that said original letters were "granted to him upon his belief that he was a citizen of the United States, which belief arose from ignorance of the laws of the United States." Held: that the original and reissued patents were both invalid, first, because of false suggestion, the second from want of power in the commissioner to grant it.
[Cited in Hancock Inspirator Co. v. Jenks, 21 Fed. 914.]

7. Held, also, that the commissioner could not grant a new original patent eight years after the invention had been in public use.

In equity.

This was a bill in equity, filed to restrain defendants [Thomas Adams, William G. W. Jaeger, and Luther Martin] from infringing letters patent [No. 3,824] granted John Gilbert Mini, November 13, 1844, for an "improvement in making lampblack," and as

---

signed to plaintiff [Richard S. Child]. The facts upon which the decision turned are fully stated in the opinion.

George Harding and John Cadwallader, for complainant.

John Fallon and R. P. Kane, for defendants.

GRIER, Circuit Justice. The first question in order, in the consideration of this case, will be, whether John Gilbert Mini, the patentee under whom the complainant claims, has obtained a legal grant or patent for the invention claimed. If this be answered in the negative, it will be unnecessary to notice the other questions, which have been so fully and so well argued by counsel.

The facts connected with this point are undisputed, and appear in the pleadings and exhibits annexed. The original letters patent to J. G. Mini for his "improvement in making lampblack," were issued on the 13th of November, 1844, and recited that Mini "has made oath that he is a citizen of the United States, etc.," "paid the sum of thirty dollars, etc." On this patent, the complainant, as assignee of Mini, filed his bill to April term, 1850, against the respondents, alleging an infringement and praying for an injunction. Among other matters of defense pleaded in the respondent's answer, it was averred that "J. G. Mini was not entitled to said patent at the time it was granted to him, because he was an alien, being a native of France and not a naturalized citizen of the United States; and that he had applied for, and obtained said letters patent, as a citizen of the United States, for the purpose of defrauding the revenue of the additional fees and charges, which, as an alien, he should have paid in order to obtain a patent."

Admitting the fact as alleged in this plea, but denying the fraudulent intent, the patentee surrendered his patent on the 24th of August, 1852, and received another called a "reissue," which is attempted to be connected with the original application by the following recital: "Whereas, John G. Mini, of Philadelphia, Pennsylvania, has alleged that he has invented a new and useful improvement in making lampblack (for which letters patent were issued to him, dated 13th November, 1844, which letters having been surrendered by him, the same have been canceled, and new letters ordered to issue to him on the same specification, said original letters having been granted to him, upon his belief that he was a citizen of the United States, which belief arose from ignorance of the laws of the United States; he also having since paid into the treasury of the United States the sum of two hundred and seventy dollars, the balance due from the original granting of said letters patent), which he states has not been known or used before his application, has made oath that, at the time of his original application, he was a citizen of

France; that he does verily believe that he is the original and first inventor or discoverer of the said improvement, and that the same hath not to the best of his knowledge and belief been previously known or used; has paid into the treasury of the United States the sum of fifteen dollars, and presented a petition to the commissioner of patents, signifying a desire of obtaining an exclusive property in the said improvement, and praying that a patent may be granted for that purpose, etc."

On this reissue patent the complainant filed, to October term, 1852, the bill in the present case, praying it to be taken as "a supplemental and original bill or original in the nature of a supplemental" to that filed on the original patent.

The question now to be considered, is, therefore, whether an alien, who has obtained a patent by a false oath, suggesting that he is a citizen, can, after a lapse of seven years, and a surrender and cancelling of the patent thus obtained, lawfully obtain what is called a reissued patent connected with his original application—and whether the commissioner of patents has any authority to grant such a "reissued" patent. The right of Mini, with the consent of his assignees to surrender his original patent, and to have it cancelled, can not be doubted, whether it had been obtained by false suggestion or not; and when the invention or discovery had not been in public use more than two years the commissioner might probably grant him a new original patent or an original application, alleging, inter alia, "that he does not know or believe that his invention was before known or used." But a new patent seven or eight years after the application, and after the patentee and others had publicly used the discovery or invention, would be of little use—unless it can be construed to retroact by way of confirmation of the first.

The patent act of 1793 did not provide for a reissue of a patent, after a surrender or cancellation of it, by the patentee on account of a defective or insufficient description or specification. The great difficulty of making a correct specification which will stand the test of judicial scrutiny, and the very frequent instances in which the most valuable inventions and discoveries have been lost to meritorious patentees through inadvertency, accident, or mistake, originated the practice of granting reissues, in such cases of hardship, without any statute directly authorizing or regulating them. This practice was confirmed by the decision of the supreme court in Grant v. Raymond, 6 Pet. [31 U. S.] 218, in January, 1832. This was a case of a defective specification, and refers only to the practice of reissuing patents to cure such defects. It had never been suggested to the patent office or the court, from anything that appears, that a false or mistaken assertion, in regard to a matter of fact of which the applicant is presumed to be peculiarly cog-

nizant, and by which his patent was obtained for one-tenth of its cost, was ever considered as an inadvertence, accident, or mistake which could be thus remedied. But in order to confirm the decision of the court and to define the power of the patent office on this subject—the act of July 3, 1832 [4 Stat. 559], was immediately passed. This act gave to the secretary of state a much more extensive power than previous practice had assumed, or the judgment of the supreme court had confirmed. But though it might have included a case like the present within its terms, it left the question of the connection of the new patent with the old in such a case, wholly unsettled.

This act was repealed by the act of July 4, 1836, which established a new system, entirely abolishing all that preceded it. The power of the commissioner of patents to issue patents, and the effect of them, are carefully defined by this statute. By defining the conditions under which the power it confers shall be exercised, it necessarily excludes it in all others, except perhaps the correction of their own clerical errors. The thirteenth section of this act declares that: "Whenever any patent, etc., shall be inoperative or invalid by reason of a defective or insufficient description or specification, or by reason of the patentee claiming in his specification, as his own invention, more than he had or shall have a right to claim as new, if the error shall have arisen from inadvertence, accident, or mistake, or without any fraudulent or deceptive intention, it shall be lawful for the commissioner, upon the surrender, etc., to cause a new patent to be issued for the same invention, etc., and the patent so reissued, etc., shall have the same effect and operation in law on the trial, etc., as though the same had been originally filed in such corrected form before the issuing of the original patent."

It needs no argument to show that this case comes neither within the letter or the spirit of this section of the act—nor can the case of Grant v. Raymond [supra] be cited as authorizing any such general power in the commissioner to grant a new patent to one who has obtained it by false suggestion, which shall retroact by way of confirmation of the original, or stand in its place. Where a statute defines the extent of power given to one who acts ministerially, the courts can not extend it, or validate acts done without or beyond its authority.

I would not be considered as imputing any moral guilt to Mr. Mini, or intent to commit perjury, in this particular case. It is possible that men may live thirty years in this country, and not know that in order to become a citizen, an alien must be naturalized. It is possible, too, that an alien dragged to the polls "by respectable gentlemen," and permitted to vote by a complaisant inspector without question, may fancy himself to have been thus transmuted into a citizen. But instances of such amiable ignorance are so rare, that it could hardly be expected that legislatures should anticipate it, by providing a remedy for those whose mistakes are the consequence of it. Nor will the hardship of this particular case justify the commissioner of patents in assuming a power not granted to him by the statute. He has no power to confirm a patent obtained by false suggestion, either by pardoning the offense or excusing it on the plea of innocent ignorance. A mistake or inadvertence on the specification of a patent, can be proved by the face of the paper, and the reasons alleged for it. But where a person makes a mistake in his oath of citizenship, and enjoys the benefit of it for more than half his term, his innocence can be proved by his own oath alone; and he ought not to be allowed to obtain a new patent for the other half by stultifying himself. This would be holding out a premium for profitable mistakes, and an encouragement to double perjury.

But, it is contended, that if the reissued patent is void because issued without authority, the original may be set up as a good title. That it is not void, but voidable, and that the payment of the additional fee is a matter which concerns the government only, and can not be alleged as a defense by third persons. This might be true if the applicant had truly disclosed his citizenship, and had given his note for the three hundred dollars which he had afterward neglected or refused to pay.

The act of 1836 permits aliens as well as citizens to receive patents for inventions, but under very different conditions. A citizen, or one who has declared his intention of becoming such, pays a patent fee of thirty dollars only. An alien, if he be a subject of the king of Great Britain, must pay five hundred dollars, and all other persons three hundred dollars. An alien patentee is also compelled to "put, and continue on sale to the public, on reasonable terms, the invention or discovery for which the patent is issued." If it were not so, it would be in the power of an alien inventor, by means of his patent, to completely prohibit the use of his invention for fourteen years in the United States.

The sixth section of the patent law, accordingly, provides that, "before any inventor shall receive a patent," among other things, he shall make oath "of what country he is a citizen." This, as well as the other duties required by this section, is a condition precedent, without which the commissioner has no authority to grant a patent, and a defendant may allege in his defense the neglect, or fraudulent omission to fulfill these conditions, or any of them, as a sufficient defense; and, although the court has no power to avoid or annul a patent, by its decree or judgment, the patent, so far as respects that suit, is "inoperative and invalid" to vest a title in the alleged invention.

Many of these defects or omissions may, by

the act, be given in evidence, under the general issue, in an action at law; other defenses, such as "a license," or "alienage," must be specially pleaded. If, therefore, an alien, either through ignorance, or intention, falsely represents himself as a citizen, in order to obtain a patent, he not only fails in performing one of the conditions which the statute imposes in order to entitle him to a patent, but he commits also a fraud upon the government. And as this fact appears in the complainant's bill, the respondent may avail himself of it, as a defense to the title set up under the patent, and allege that the patent thus obtained is "inoperative and invalid."

We are of opinion, therefore, that the original patent of 1844, which issued to John Gilbert Mini, was invalid, because the applicant did not comply with the conditions of the patent act, in stating truly "of what country he is a citizen," and that the reissued patent of 1852 is equally invalid, the commissioner of patents having no power to grant such a patent, to act by way of confirmation of the original, nor to grant a new original, eight years after the invention has been in public use, which will give a valid title to such a patentee. The complainant's bill is therefore dismissed with costs.