DE LA VERGNE REFRIGERATING MACH. CO. *v.* FEATHERSTONE *et al.*

(*Circuit Court, N. D. Illinois.* February 29, 1892.)

1. PATENTS FOR INVENTIONS—VALIDITY—ISSUE OF PATENT TO DEAD MAN.
   Under Rev. St. U. S. § 4896, which provides that, if an inventor dies before a patent is granted him, the right of applying for and obtaining a patent shall vest in his personal representatives, a patent issued to an inventor after his death, he having died after making application for such patent, is void.

2. SAME—ESTOPPEL IN PAIS.
   Where a patent is void because granted to a dead man, representations that the patent is valid, made by a party interested in it, do not estop him from denying its validity, as against a person who does not claim title through him.

In Equity. On demurrer. Bill by the De la Vergne Refrigerating Machine Company against John Featherstone and others to restrain the alleged infringement of a patent. Defendants demur. Demurrer sustained.

*Banning, Banning & Payson,* for complainant.

*Bond, Adams & Pickard,* for defendants.

BLODGETT, District Judge. This case is now before the court on a general demurrer to the bill of complaint. The matters set forth in the bill necessary to be considered on this demurrer are that before the 24th of November, 1875, one James Boyle had invented the device covered by the patent, infringement of which is charged in this case, and on the said 24th day of November he filed his application for his patent, and appointed Alexander & Mason his attorneys to solicit and advocate his application; that on the 27th of said month of November, and before the allowance of his patent, the said James Boyle died intestate, leaving a widow, Theresa M. Boyle, and four children; that on December 2, 1875, Mrs. Boyle, the widow, entered into a contract with Thomas L. Rankin, whereby he agreed to complete an ice machine, which was in process of construction at the time of Mr. Boyle's death, and to press the application for a patent, and, in case a patent was obtained, to use his best efforts to introduce the machine, and share the profits with Mrs. Boyle until she should have received $5,000, when she was to assign the patent and the machines then in use to Rankin; that, under direction of Rankin, Alexander & Mason, the solicitors appointed by Boyle, prosecuted the application for a patent, and, to overcome objections made by the examiner to the said specifications and claims made by Boyle, said solicitors on the 20th of December, 1875, amended the specifications and claims, as the same had been prepared by Boyle, and thereafter, and on the 21st day of March, 1876, the patent No. 175,020 was granted unto James Boyle, his heirs or assigns, for the said invention, for the period of 17 years from the last-mentioned date; that on the 9th day of March, 1876, said Thomas L. Rankin obtained temporary letters of administration on the estate of said James Boyle, and afterwards, and about the 5th day of July, 1876, Theresa M. Boyle, the widow of said James Boyle, was appointed administratrix of the estate

of said James. The bill then states divers dealings with the patent by several persons and corporations, among whom are the Boyle Ice Company and the Consolidated Ice-Machine Company, in which companies the defendant Skinkle was a stockholder and officer, which companies had, by some instruments of writing or agreements, the right to manu-facture ice-machines under the said patent for a term of years, but which term had elapsed before the present complainants had acquired what they called the title to said patent, and that the defendants Featherstone had manufactured ice-machines in accordance with the patent, under contracts with said corporations; that defendant Skinkle, while acting as an officer of the Boyle Ice Company and Consolidated Ice Company, had asserted the validity of the patent in divers ways, and especially by an affidavit filed in the patent-office. The contention of the defendants on the demurrer is that the patent was void from the beginning, because the patentee was dead at the time the patent was granted; that there was, in fact, no grantee in the patent.

It is a proposition so axiomatic and elementary as to require no cita-tion of authority, that all the rights and remedies of inventors to the exclusive property in their inventions comes from the statutes. It is the patent issued to the patentee in pursuance of the constitution and laws of the United States which gives him the property right in his in-vention, and protects him in the use thereof. As was said by Justice GRIER in *Child* v. *Adams*, 1 Fish. Pat. Cas. 189:

"The power of the commissioner of patents to issue patents, and the effect of them, is carefully defined by the statute. By defining the conditions un-der which the power it confers shall be exercised, it necessarily excludes all others, except, perhaps, the correction of their own clerical errors." See, also, *Morton* v. *Eye Infirmary*, 2 Fish. Pat. Cas. 320.

The statutes of the United States recognize only three classes of per-sons to whom a patent for an invention can issue. These are—*First*, the inventor himself; *second*, the assignee of the inventor, when the assign-ment is made before the issue of the patent; and, *third*, the executor or administrator of the inventor, if the inventor dies before the patent is granted. Rev. St. U. S. §§ 4886, 4895, 4896. "A patent for an inven-tion is a grant by the state of the exclusive privilege of making, using, and vending, and authorizing others to make, use, and vend, an inven-tion." 2 Kent, Comm. p. 366. In *Galt* v. *Galloway*, 4 Pet. 332; *Mc-Donald's Heirs* v. *Smalley*, 6 Pet. 261; *Galloway* v. *Findley*, 12 Pet. 264, —it was held "that a patent of lands to a dead man and his heirs was void, and conveyed no estate;" and the same principle is affirmed in *Davenport* v. *Lamb*, 13 Wall. 418. And, upon the principle established in these cases, I am unable to see why a patent for an invention to a dead man is not wholly inoperative. The grant by letters patent to a man and his heirs, or his heirs and assigns, for an invention, conveys an es-tate of inheritance during the existence of the rights created by the grant. But for the use of the word "heirs" in the statute and the patent, the grant might be construed as wholly personal, and to end with the life of the grantee. On the death of the patentee, the right secured goes,

not to the heirs themselves, but to the personal representatives of the deceased, in trust for the heirs or devisees. *Valve Co. v. New Bedford,* 19 Fed. Rep. 753; *Bradley v. Dull,* Id. 913. In other words, the grant to a living patentee is complete and operative—*First,* to the patentee or grantee named, if living; and, *second,* in the event of his death during the term of the patent, to his personal representatives, executors, or administrators, for the use of his heirs. In this patent there was no grantee; the person named as grantee or patentee was dead at the time of the grant, and therefore there was no person to take the thing granted, and hence the grant never took effect. There is no hardship in this construction of the law, for by section 4896, Rev. St., it is provided that, if a person who has made any new invention or discovery for which a patent may have been granted shall die before a patent is granted, the right of applying for and obtaining a patent shall vest in his executor or administrator, in trust for his heirs, devisees, or assigns, and it also provides for the manner in which they shall prosecute and obtain a patent. Under the provisions of this section, it is plain that, on the death of James Boyle while the proceedings to obtain the patent were incomplete, his administrator should have suggested his death to the patent-office, and taken up the prosecution of the application, and secured the issue of the patent to the administrator. The statute, by its express words, provides for the administrator or executor to prosecute the application in case of the death of the inventor before the patent is granted.

The allegations in the bill that, after the death of Mr. Boyle, his widow made a contract with Rankin, by which he was to prosecute the application for and obtain the patent, do not, as it seems to me, help the case. Mrs. Boyle, at the time she made the alleged contract with Rankin, was not administratrix of her husband's estate, and had no right to act in the premises, and could not clothe Rankin with any authority to act. In fact, she was not appointed administratrix until after the patent-office had allowed the patent, and nothing remained to be done but to pay the final fee. The authority of Alexander & Mason, the solicitors appointed by Mr. Boyle, ended with his death, and all steps taken by them after Mr. Boyle's death to procure the issue of the patent were wholly without authority from any one having any power to act in the matter. The statute having in clear terms provided what shall be done to preserve an inventor's right to a patent in the event of his death before the patent is granted, there seems to me no escape from the conclusion that it is only by following the mode pointed out by the statute that a valid patent can be obtained in such cases. It is not necessary, for the purposes of this case, to decide whether a new application should have been filed by the administrator, or whether the administrator could have stepped into the proceedings on suggesting the death of the applicant, and been allowed to continue the proceedings in the name of the administrator. This, perhaps, would be a matter of practice for the patent-office to decide. But to whom the patent shall issue is a matter of substance, and I am clear that, after the death of the applicant, the patent can only issue to an executor or administrator, as provided by statute.

It is also insisted, in support of the demurrer, that the changes made in the specifications as originally prepared, and which were properly signed and verified by Boyle, so that the patent was not granted on the specifications and claims made by Boyle, also vitiated the entire proceeding, and rendered the patent void, on the authority of *Eagleton Manuf'g Co.* v. *West, Bradley & Carey Manuf'g Co.*, 111 U. S. 499, 4 Sup. Ct. Rep. 593; and while there is much force in this point, as there can be no doubt that all authority of Alexander & Mason to act for Boyle in the prosecution of the application for the patent ended with the death of Boyle, yet I prefer to place my decision on the more cogent argument that the patent was void *ab initio* because Boyle, the grantee, was dead at the time the patent was issued.

Quite a portion of the bill is taken up with allegations showing, or tending to show, that the defendant Skinkle has dealt with the patent, at some time since its issue, as a valid patent, that he has held it out to the public as valid, and that, in certain proceedings instituted in the patent-office, he made affidavit as to its validity. The bill shows that for a time Skinkle was an officer and stockholder in certain corporations engaged in the manufacture and sale of ice-machines under this patent, but it also shows that whatever interest those companies had in the patent had terminated before the present complainant acquired its title. If this patent was void from the beginning, no conduct on the part of Skinkle, or those associated with him, could give it validity. No rule of estoppel can be called in to aid these complainants, who, by the showing of their bill, did not acquire title from Skinkle, or the corporations with which he is connected, in dealing with this patent as against the public, if it was void from the beginning. That there are cases where parties may, by dealing with a patent, estop themselves from denying its validity, is undoubtedly true; but none of the cases cited go to the extent of holding that any acts of an individual can vitalize and make valid a patent which never had validity, or took effect as a grant. I do not, therefore, see that any force is added to the complainant's case by these allegations. If any person had challenged the validity of this patent in the hands of the Boyle Ice Company or the Consolidated Ice Company, while Skinkle was a member of those companies, no acts of his, supporting or alleging the validity of the patent, would have been in the least material in resisting such challenge. As to the defendants Featherstone, the only allegation of the bill is that they manufactured ice-machines for the Boyle Ice Company and the Consolidated Ice Company while those companies considered themselves entitled by their licenses or other agreements to the use of the patent. They were, at the most, mere employes of the principal infringers, and cannot possibly be held to have either indorsed or validated the patent by their action in manufacturing machines such as are described in the specifications. For these reasons the demurrer is sustained, and the bill dismissed for want of equity.