## H. N. GREENWELL *vs.* J. D. PARIS *et al.*

### IN EQUITY. BEFORE JUDD, C.J.

### FEBRUARY, 1882.

The Court declines to set aside certificate of a Commissioner of Boundaries and Royal Patents issued thereon: it appearing that plaintiff had sufficient notice of the proceedings before the Commissioner and acquiesced in the line found by him: and that a Royal Patent was issued upon said certificate, merely to give the metes and bounds, there being a former Patent for the same land by which the title passed.

### DECISION OF JUDD, C.J.

This is a bill in equity to set aside the certificates of boundaries of the lands of Kealakekua and Kaawaloa, in South Kona, Hawaii, and the Royal Patents issued in pursuance of these certificates. The bill alleges that these lands were awarded by the Land Commission (Award Number 8452) to one Keohokalole; that in pursuance of this Award a Royal Patent was issued for Kealakekua, dated 12 January, 1858, and numbered 3607: that thereafter both these lands became the property of J. D. Paris, Sr.: that in 1873 Mr. Paris applied to Rufus A. Lyman, then Commissioner of Boundaries for Hawaii, to have the boundaries of these lands certified; that in 1876, the Commissioner certified the boundaries of these lands, but without certifying the line between them; that J. D. Paris conveyed the land of Kealakekua to his son, J. D. Paris, Jr.; that on the 24th May, 1880, J. D. Paris, Jr., agreed to sell the land of Kealakekua to the complainant, and executed a conveyance therefor, in December, 1880; that on the 1st of October, 1880, J. D. Paris, Jr., pointed out to the complainant and to D. H. Hitchcock, a surveyor, the alleged boundary line between Kealakekua and Kaawaloa; that this boundary line is not true and correct, but deprives the complainant of about 500 acres of his land of Kealakekua; that in April, 1881, the defendants, or one of them, applied to Hon. F.

S. Lyman, the present Boundary Commissioner, to have the boundary line between these two lands certified: that it was not disclosed to the Commissioner that the complainant was the owner of Kealakekua, and the Commissioner, by certificates dated April 18th, 1881, certified the boundary line between the lands as pointed out by J. D. Paris, Jr.; that in making such certificates the Commissioner professed to act under the application of 1873, and did not notify the complainant of such hearing, and he was not represented; that in June, 1881, application was made for Royal Patents for those lands, and the Minister of Interior issued them according to the boundaries certified on the 18th April, 1881, the Patent for Kealakekua being numbered 7533, and that for Kaawaloa being numbered 7532; that by the granting of those certificates and Patents the complainant is injured, etc.; and the bill charges that the certificates and Patents are, under the circumstances, void and of no effect, as against this complainant, and should be so adjudged, etc.

The answer admits the allegations in the bill as far as the allegation that the boundary line as pointed out by J. D. Paris, Jr., to complainant between the lands of Kealakekua and Kaawaloa is not the true line between them, and alleges that it was a part of the agreement of May, 1880, that J. D. Paris, Jr., should obtain a Patent for Kealakekua by metes and bounds at his own expense, and that the line pointed out to complainant was accepted and agreed to by him as the correct boundary to be certified by the Commissioner of Boundaries. The answer also admits the making of the application to Hon. F. S. Lyman to certify the boundaries between the two lands, but denies that the fact of the sale of Kealakekua to the complainant was not disclosed to the Commissioner: and the answer admits that the Commissioner professed to act under the petition of 1873, and that the Commissioner did not notify complainant, but denies that complainant had no notice of the application. The answer also admits the issuing of the certificates and Royal Patents in pursuance, and denies the injury to complainant, and that the certificates and Royal Patents are void and should be so ad-

judged. The answer further alleges that the conveyance to complainant is a quit claim of Kealakekua as described in Royal Patent No. 3607, but that this Patent does not set forth the boundaries of the land, and the Patent No. 7533 was obtained for Kealakekua by request of complainant, and it was by the knowledge and consent of complainant and pursuant to his agreement that the boundary line therein was made known to the Commissioner, and that as a part of the consideration of the agreement a portion of the land of Kaawaloa was included in the Royal Patent for Kealakekua. And that the complainant is estopped from denying the correctness of the boundary line or the validity of the Royal Patent 7533.

A hearing was had on the 30th January, 1882. Without detailing the evidence, I have come to the following conclusions of fact and law:

In 1873 Rev. J. D. Paris owned both the lands of Kealakekua and Kaawaloa, which adjoin each other and run from the sea to the mountain. He applied for a certificate and one was made establishing their boundaries as one land; not running the dividing line. On the 17th October, 1874, Mr. Paris, Sr., conveyed Kealakekua to his son, J. D. Paris, Jr., who made the following agreement with the complainant:

"I the undersigned, J. D. Paris, Jr., do hereby sell to H. N. Greenwell, the Ahupuaa of Kealakekua, South Kona, Hawaii, with all the improvements thereon, and 400 head of cattle, for the sum of twelve thousand dollars, and on receipt of the said $12,000, do hereby bind myself to give unto the said H. N. Greenwell a quit-claim deed free of incumbrances, of the said land of Kealakekua, with Royal Patent for same, etc., etc., etc.

J. D. PARIS, JR."

Kealakekua, Hawaii, May 24th, 1880.

A Royal Patent had been issued for the land of Kealakekua. It is dated 12th January, 1858, and numbered 3607, and grants the "Ahupuaa of Kealakekua" to Keohokalole, but giving no description by metes and bounds. This patent is evidence that the Government right to commutation therein is extinguished.

I see no reason why a second patent for the same land, granting it by metes and bounds, in pursuance of a certificate of the proper Boundary Commissioner, cannot legally be issued. The object of the boundary commissioner is to enable parties to obtain such Royal Patents defining their lands by metes and bounds, and, whether they hold by the Award of the Land Commissioner, deed of the King or Royal Patent, the Boundary Commissioner has jurisdiction if the title was granted without defining the boundaries of the lands.

I am satisfied that what the purchaser (Mr. Greenwell) desired was a Royal Patent by metes and bounds, and that is what is mentioned in the agreement of 26th May, 1880. He says he wished a "survey so as to know what he was buying." His attorney accepted on the 27th December, 1880, a quit claim deed for the land on the Patent No. 3607 without metes and bounds, under a promise that the Royal Patent by metes and bounds should be forthcoming. Both the respondents testify in substance that complainant required a Royal Patent to be furnished by Mr. Paris, Jr., defining the metes and bounds before he could consider the agreement for a Royal Patent complied with. The delay on the part of complainant to make payment from May 24th to December 27th, cannot be explained, to my mind, unless he was in fact waiting for the Royal Patent by metes and bounds, for he was aware of the existence of the Royal Patent for Kealakekua granting it by name and without defining the boundaries, and could have had a deed upon this patent immediately.

I understand, however, that the complainant testifies that he wished merely a survey. An *ex parte* survey would not be an authoritative confirmation of the boundaries of the land purchased, and he certainly led the respondents to believe that he required a Royal Patent by metes and bounds.

His action in meeting the surveyor and Mr. Paris, Jr., on the land, his seeing the surveyor run the dividing line between them, making suggestions where it should be and consenting to it, leads to this conclusion. It has also the effect of committing

him to the boundary line as run. The surveyor, the respondents, and, as I think, the commissioner, knowing that the complainant as an intending purchaser had consented to this line, it would have been idle to have given him formal notice of the hearing before the commissioner.

Remembering the bargain between them for a Royal Patent by metes and bounds at Paris, Jr.'s, expense, and his acquiescence in the line as run by the surveyor, he should have inferred that this survey would be presented seasonably to the commissioner for adjudication. If he had grounds for objecting to the line, he had an opportunity of presenting them to the commissioner or the respondents.

I remark here that no evidence was offered to show that the line decided by the commissioner defining the division of these two lands is untrue, and this would be sufficient ground for declining to declare the patents void. The complainant's counsel have, however, asked that the Court order the commissioner to re-open the matter and take fresh evidence. I think he is too late for this.

I do not consider it necessary to go into the question whether it was competent for the commissioner to make a second adjudication upon the original petition of Mr. Paris. At the time of this matter being presented to the commissioner the title of both lands was still in the respondents. The fact that the deed for Kealakekua passed before the date when the commissioner signed the certificates, is not important, considering the complainant's acquiescence, and his silence, in not notifying the commissioner that he had bought the land and objected to the survey, estops him from objecting to it now. His consent to the line recited in the second Royal Patent for Kealakekua estops him from disputing the regularity of the proceeding before the Boundary Commissioner, upon which it is based.

Bill dismissed.

*E. Preston*, for complainant.

*A. S. Hartwell*, for respondents.

Honolulu, February 28th, 1882.