IN THE MATTER OF THE SETTLEMENT OF THE BOUNDARIES OF ONE PART OF THE AHU-PUAA OF PAUNAU.

No. 1109.

APPEAL FROM COMMISSIONER OF BOUNDARIES, SECOND CIRCUIT.

SUBMITTED NOVEMBER 22, 1918.        DECIDED DECEMBER 7, 1918.

COKE, C. J., KEMP AND EDINGS, JJ.

BOUNDARIES—*jurisdiction of commissioner.*

> A boundary commissioner is authorized to decide and certify boundaries only upon the petition of an owner and his jurisdiction exists only in cases where the petitioner's ownership of the land claimed in his petition is not contested.

SAME—*same*.

In a proceeding under chapter 31 R. L. 1915 by an alleged owner of land to have the boundaries thereof decided and certified by the boundary commissioner and a contestant files a claim asserting title in himself to a definite portion of the land claimed in the petition the boundary commissioner is without jurisdiction to proceed in the matter and should dismiss the petition.

SAME—*same*.

Where the dispute as to ownership arises solely by reason of adverse claims as to the location of the common boundary of two adjoining lands a proper case for the commissioner of boundaries is presented.

OPINION OF THE COURT BY KEMP, J.

This is a proceeding for the settlement of the boundaries of the mauka portion of the ahupuaa of Paunau instituted before the boundary commissioner for the second judicial circuit. The petitioners, the trustees under the will and of the estate of Bernice Pauahi Bishop, deceased, set forth in their petition, in substance, that in and by land commission award No. 7713, apana 26, the board of commissioners to quiet land titles in the Kingdom of Hawaii, under date of April 7, 1854, awarded to Victoria Kamamalu all of the ahupuaa of Paunau in or near Lahaina, Maui, and that the said ahupuaa of Paunau was awarded by name only and not by boundaries defined or specified in said award; that in and by royal patent No. 4475 dated April 3, 1861, there was granted and confirmed unto said Victoria Kamamalu, in and by apana 26 thereof, the aforesaid ahupuaa of Paunau, and that in said patent the grant of said ahupuaa was by name only and not by boundaries described or specified in said patent and that the boundaries have never been judicially settled; that the petitioners, as such trustees, are and claim to be, as successors in title and interest to Victoria Kamamalu, the owners of all of the mauka part of the ahupuaa in question and that as such owners are desirous of having the boundaries of the

said mauka part settled. By schedule and map or plat attached to and made a part of the petition is set forth a description by metes and bounds of what the petitioners claim are the outer boundaries of said mauka portion of said ahupuaa as the same existed at the time of the award to Victoria Kamamalu and as the same are now claimed by the petitioners.

Prior to the filing of the petition upon which the hearing was had the petitioners had filed a first petition, which was withdrawn upon the filing of the petition upon which the hearing was had, in which first petition the boundaries by survey were claimed to be practically as now contended for by the Territory, as hereinafter set out. In the first petition the commissioner was asked to adjudicate the boundaries of said ahupuaa without mentioning any date to which the adjudication should apply.

In due time the Territory of Hawaii filed its claim and protest in which it claims to be the owner and/or to have the right to the custody, control and possession and power of disposition, under the United States of America, of all that portion of the land described in the second petition lying south of a line (described by course and distance in said claim and protest) running generally along the south pali of Kahoma valley and claimed by said Territory to be the northern boundary of the Lahainaluna school land so-called and the southern boundary of the land covered by the award to Victoria Kamamalu. The Territory in setting forth the source of its alleged title to said portion of the land claimed by it says, in substance, that between 1831 and 1835 the King and chiefs, the then owners thereof, gave and transferred to the American Board of Commissioners for Foreign Missions the land now claimed by the Territory; that it was held and occupied by said board for the Lahainaluna seminary without dispute from 1831, or at the latest 1835, until the said

land was transferred and given by said board to the government of the Kingdom of Hawaii, upon certain conditions which were accepted by the privy council in 1849 and ratified and confirmed by the legislature of the Kingdom in 1850 and the school and the land now claimed by it were thereby transferred to the government, all of which was prior to the award under which the petitioners claim title; that the government has never parted with the possession nor title to the land now claimed by it but has retained both possession and title without dispute or adverse claim until the present date, that is to say, the title and possession of said land has been in the Territory of Hawaii and its predecessors in interest from at least 1835 without interruption.

In the concluding paragraph of its claim and protest the Territory says that, without waiving or intending to waive any other grounds of protest or objection to which it may be entitled in the premises, the boundary commissioner is now without the jurisdiction to hear and adjudicate the boundaries of the so-called mauka portion of Paunau in so far as the said alleged boundaries encroach upon the land now claimed and owned by it and that it does not consent to such hearing and adjudication but objects to the same. It says further that any proceedings by the commissioner with the view to adjudicating the southerly boundary of Paunau will, unless said southerly boundary be fixed as being no further south than the southerly pali of the Kahoma gulch (the south pali of Kahoma gulch being claimed by the Territory as the south line of its land as set out in its description attached to its protest), be to the prejudice of and in contravention of the rights of the Territory and wholly illegal and void and without effect and in this behalf the Territory further states that the said southerly pali of Kahoma valley is the southerly line of the mauka part of the land of Paunau

which was awarded to Victoria Kamamalu by L. C. A. 7713, apana 26, and confirmed by R. P. 4476.

The contention of the Territory as disclosed by its claim and protest seems to be twofold. First, that by reason of the gift of the King and chiefs to the mission board and the subsequent transfer to the Hawaiian Kingdom the portion of the land claimed by it ceased to be a part of the ahupuaa in question prior to the award thereof and did not therefore pass to Victoria Kamamalu by the award of Paunau to her, and, second, that if the land in question was included in the award of Paunau to Victoria that the Territory has now acquired title by adverse possession and in either event now objects to the commissioner adjudicating the boundaries of its land upon the application of the petitioners.

At the hearing before the commissioner the Territory insisted and in its brief insists that, in view of its claim of title to a specific portion of the land claimed by petitioners, the commissioner should have refused to hear the case until the question of title was settled in a court of competent jurisdiction, and that in any event the commissioner could only determine the ancient boundaries of the ahupuaa, while the petitioners insisted that he adjudicate the boundaries as they existed at the date of the award.

The commissioner took the view that to attempt to adjudicate the boundaries as they existed at the date of the award would necessitate an adjudication as to the validity of the title claimed by the Territory, which was beyond his jurisdiction. He therefore overruled the contention of the petitioners and the first contention of the Territory and rejected all evidence except such as he conceived to relate to the ancient boundaries of the ahupuaa and confined his findings and adjudication to the ancient boundaries as they existed prior to the award.

Other contestants appeared and filed their claims but with the exception of the claim of the Territory they were all amicably settled by stipulation and need not be noticed by us.

At the hearing it was admitted by all parties that the ahupuaa of Paunau was by name only awarded to Victoria Kamamalu by L. C. A. 7713, likewise granted to her by R. P. 4475 by name only, and also that the petitioners as trustees of the Bishop Estate are the successors in interest and title to Victoria Kamamalu and hold the record title to all of the ahupuaa as awarded to Victoria Kamamalu. It was expressly stipulated that the above admissions did not relate to present ownership of said lands.

The petitioners produced several kamaainas who gave evidence as to the boundaries of Paunau as the same were told to them by their ancestors, after which the surveyor who did the surveying for petitioners for use in this proceeding testified that he made a survey of Paunau following the information given him at the time by some of the same kamaainas who have testified before the commissioner and also using for his guidance a survey, field notes and map of Paunau made by W. P. Alexander, found in the book of undated Lahaina surveys on file in the office of the surveyor of the Territory of Hawaii, and a survey and notes of said ahupuaa made by Geo. F. Wright, also taking into account the recorded surveys of adjoining lands, and that the field notes and map or plat attached to the petition were made by him as the result of his survey and that they are a correct translation or amplification in surveying terms of the boundaries of Paunau as so ascertained by him.

The contestants offered no kamaaina evidence as to the boundaries of Paunau other than such as they sought to develop upon cross-examination of petitioners' witnesses. The Territory did, however, seek to prove the allegations

of its claim and protest as to the acquisition by it in the manner set forth in its claim and protest of title to a definite portion of the land claimed by the petitioners to be a portion of the ahupuaa of Paunau but upon objection of petitioners same was by the commissioner excluded and the case was decided wholly upon the evidence produced by the petitioners.

The commissioner entered a decree finding the lawful and equitable ancient boundaries of the mauka portion of the ahupuaa of Paunau (before any award was issued) to be practically as claimed by the petitioners but inserted in said decree a statement that Lahainaluna school holds and claims that portion of Paunau south of the south edge of Kahoma valley and inserted in the map or plat accompanying said decree the same statement at the places where the land so claimed is represented in said map or plat.

From this decree the petitioners have appealed to this court, their particular complaint being that the commissioner should have found and decreed what the boundaries were at the date of the award instead of the ancient boundaries as they existed before the award was made, though admitting that the boundaries as found by the commissioner are the boundaries as of the date of the award. The petitioners also insist that the statement inserted in the decree and on the map or plat attached to it to the effect that the school claims and holds that portion of the land south of the south edge of Kahoma valley should not have been inserted therein. These we understand to be the principal contentions of the petitioners.

The Territory has not appealed but now insists, first, that since it appeared from the claim and protest filed by it that it was claiming title to a specific portion of the ahupuaa in question the commissioner should have refused to assume jurisdiction to adjudicate the boundaries

in this case over the Territory's objection and should have either dismissed the petition or have required the petitioners to first establish their title to the disputed portion in a court of competent jurisdiction, and, second, that if the above contention is not upheld the commissioner was correct in holding that only the ancient boundaries as they existed prior to the award could be adjudicated by him, and in that event his decree should be affirmed.

If this first contention of the Territory should be sustained it would obviously require a reversal of the decree of the commissioner with an order to the commissioner to either suspend action in the matter pending a settlement of title or to dismiss the petition. We will therefore first consider the question thus raised as a decision favorable to the Territory will render a consideration of the questions raised by the petitioners unnecessary.

The whole scheme of deciding and certifying boundaries in such proceeding as that under consideration is peculiar to this jurisdiction and was created by statute to meet a situation that had grown out of the manner in which private ownership of lands originated in this country.

With the Hawaiians, from prehistoric times, every portion of the land constituting these islands was included in some division, larger or smaller, which had a name, and of which the boundaries were known to the people living thereon or in the neighborhood. After the surrender by Kamehameha III, in 1848, of the greater part of the land of the Kingdom to his chiefs and people, the necessity of a speedy distribution of it in accordance with what may be called the feudal rights of the chiefs required that awards of lands be made by name only without survey. No body of surveyors could have been found in the country or practically could have been brought here who might have surveyed these large estates within the lifetime

of half the grantees, so that every award should have been issued as of a tract defined by metes and bounds, or even with an approximate statement of the acreage. The "mahele" or division was therefore made without survey. Tracts of land known to Hawaiians as an ahupuaa or ili were awarded to those entitled by name of the ahupuaa or ili. By such grant was intended to be assigned whatever was included in such tract, according to its boundaries as known and used from ancient times. *In the matter of the Boundaries of Pulehunui,* 4 Haw. 239.

To carry out the intention of the King in dividing up the lands of his kingdom, a commission known as the board of commissioners to quiet land titles was created before whom it became the duty of those who had by the "mahele" or division been given lands to make proof of their claims and this board issued awards, in some instances by definite description but in many by name only just as in the great "mahele." In order to enable those who had been awarded lands by name only to afterward procure an authentic description of their land the office of commissioner of boundaries was created. The statute which establishes the office of commissioner of boundaries as presently constituted prescribes that "owners of ahupuaas and portions of ahupuaas, ilis and portions of ilis and other denominations of lands" may file with the commissioner of boundaries, when the other jurisdictional facts are present, an application to have the boundaries of said land decided and certified to by said commissioner. The particular section of the statute in question, being section 452 R. L. 1915, is, in part, as follows:

"Section 452. Application. All owners of ahupuaas and portions of ahupuaas, ilis and portions of ilis and other denominations of lands within the Territory of Hawaii, whose lands have not been awarded by the land commissioners, patented or conveyed by deed from the king or government, by boundaries decided in such award, patent

or deed, may file with the commissioner of boundaries for the circuit in which the land is situated, an application to have the boundaries of said land decided and certified to by said commissioner or his successor in office."

The exact question now presented for determination does not appear to have arisen heretofore so we have no precedent to guide us. It seems clear to us, however, from reading the statute just quoted, that the right to file a petition for the purpose of having boundaries decided and certified was conferred only upon the owner of the land to be dealt with. The commissioner is not given by the statute the jurisdiction to adjudicate titles and this court has decided that he has not that power. *Board of Education* v. *Bailey,* 3 Haw. 702-704.

If, therefore, when a petition is filed before the commissioner to have the boundaries of a certain land decided and certified, a proper claim and protest is filed by one other than the petitioner alleging that he and not the petitioner is the owner of the land in question and objects to the boundaries being decided, what course should the commissioner pursue?

As we have seen, the statute gives the right of petition to owners only. In such a case in order to determine whether the petition was filed by one having that right, the commissioner would have to determine the question of ownership and it is beyond his jurisdiction to do so. The case we have assumed is, in principle, quite analogous to a summary proceeding before a district magistrate by a landlord against an alleged tenant for possession of real estate, and the answer of the alleged tenant is a denial of tenancy and an assertion of title in himself. In such case the district magistrate is robbed of his jurisdiction and must dismiss the case. *Coney* v. *Manele,* 4 Haw. 154; *Kaaihue et al.* v. *Crabbe,* 3 Haw. 768; *Harrison* v. *McCandless,* 22 Haw. 129; *Yanagi* v. *Oka,* 24 Haw. 176.

The landlord and tenant statute confers jurisdiction upon the district magistrate to hear and determine the right of possession between the landlord and his tenant but the cases hold that his jurisdiction exists only in cases where the relation of landlord and tenant confessedly exists. The statute in question confers jurisdiction upon the boundary commissioner to decide and certify boundaries upon the petition of an owner and we think that his jurisdiction exists only in cases where the petitioner is admitted to be the owner of the land claimed by him to the extent of its ancient boundaries. The object in creating the office of boundary commissioner and giving him the right to decide and certify boundaries was to enable owners of land which had been awarded or otherwise granted by name only to obtain royal patents defining their lands by metes and bounds. *Greenwell* v. *Paris,* 6 Haw. 315. If this is the object in having boundaries decided and certified it would be idle for the commissioner to decide and certify the boundaries of land claimed by A when B is asserting that he and not A is the owner and objects to a hearing of the case on A's petition.

The Territory in this case is asserting that it is in possession of some 250 acres of the land included in the petition and has held such possession continuously ever since the award of the land in question and for a long time prior thereto, claiming title thereto. If these allegations are true it, and not the petitioners, is the owner of that part so held by it. If under these circumstances the commissioner can take and hold jurisdiction he must necessarily decide and certify the boundaries of the Territory's land upon the petition of one who has no right to represent it and over its objection. The fact that the petitioners are admitted to be the owners of a portion of the land described in their petition would make no difference.

It is argued by the petitioners in their brief that if at

the date of the award to Victoria Kamamalu the ahupuaa of Paunau included within its boundaries the 250 acres claimed by the Territory the court must so decree irrespective of whether or not by reason of anything said or done subsequently Victoria or her successors in interest lost their title by adverse possession, by deed, by gift or otherwise. This is equivalent to saying that the commissioner can only decide and certify boundaries to whole ahupuaas, while the statute expressly authorizes him to decide and certify the boundaries of portions of ahupuaas upon the petition of the owner of such portion. Section 452 R. L. 1915, above quoted.

Of course where the dispute as to ownership arises solely by reason of adverse claims as to where the common boundary of two adjoining lands is located a proper case for the commissioner of boundaries is presented and nothing we have said in this opinion is to be construed as denying the commissioner's jurisdiction in such a case.

We are of the opnion and hold that when the Territory filed its claim and protest asserting that it, and not the petitioners, is now the owner of a definite portion of the ahupuaa of Paunau, by reason of the adverse possession set up by it, that the commissioner should have refused to assume jurisdiction and should have dismissed the petition.

The decree of the commissioner is reversed and the cause ordered dismissed.

*A. Perry* and *Robertson & Olson* for petitioners.

*A. G. Smith,* Attorney General, for the Territory.