IN THE MATTER OF THE ESTATE OF F. R. VIDA.    Settlement of Administrators' accounts.

## DECISION OF CHIEF JUSTICE LEE.

As against creditors, the rule of law is, that no more shall be allowed for funeral expenses than is absolutely necessary, regard being had to the degree and condition in life of the deceased person.

The court allowed the claim of the clerk of the deceased, for three months salary, due at the time of the decease, to be paid in full, although the estate was insolvent.

The court held the administrators justified in continuing the business of the deceased for a time, where they acted in good faith. and for the best interests of the estate.

A charge made by the administrators for the services of a clerk in making up their accounts, disallowed.

Executors and administrators may compromise a debt where it is clearly for the interest of the estate to do so, and may also arbitrate disputed claims, when they act with discretion and in good faith.

The first item in the account which meets with opposition, is that of $730 81 for funeral expenses.    It is due to the administrators to say, that they stated in the outset, they did not claim to be allowed for the transportation of the deceased to Valparaiso, amounting to $307, and that they were perfectly willing to bear this expense out of their own pockets.    That with reference to the other items of the bill, they desired the court to allow no more than it deemed just, under the circumstances; adding, that when these expenses were incurred, they had every reason to believe the estate was a solvent one.

We have adopted in this country the reasonable rule of the common law of England in relation to funeral expenses, which allows the administrators to pay out so much of the assets as are necessary for defraying the funeral expenses of the deceased in preference to all other debts.    The first duty of an executor or administrator is to see the body of the deceased interred according to his rank and quality; but let the executor or administrator be cautious not to exceed in funeral pomp, especially if the estate will not pay the debts; for let his expenses be what they will, the judges will allow what they please, and they are pleased in such cases to allow but a small matter; and whatsoever the executor or administrator doth lay out more, he must bear out of his own estate.    (2 Shep. Touch. 476. Buller's Nisi Prius, 143.)    Lord Hardwick, in speaking of the foregoing doctrine has said, where a person dies insolvent, " I have often thought it a hard rule, even at law, as an executor is obliged to bury his testator before he can possibly know whether his assets are sufficient to pay his debts."    Stag vs. Punter, 3 Atk. 119.    Bac. Abr. Executors and Administrators, (L. 2.)    Still we do not think it would be wise to relax or extend it; for upon the whole we believe the rule a most salu-. tary one.    As against creditors, the rule of law is, that no more shall be allowed for funeral expenses than is absolutely necessary, regard being had to the degree and condition in life of the deceased person. The items for embalming, ornaments for coffin, and the like, we think are not allowable in this case, and we therefore order them stricken out, which, added to the $307, willingly assumed by the administrators, reduces the bill to $183 50.

L

The next item which the counsel for the creditors move to have stricken out, is $211 48, paid by the administrators to Mr. Spencer for services rendered Mr. Vida during the three months anterior to his death. It is contended that Mr. Spencer is entitled to no preference for this debt, and that he must come in and take his *pro rata* share of the assets with all the other creditors. This is the first time the question of allowing such a claim as this a preference over other debts, has been fairly brought before this court, and in the absence of any statute allowing such a priority, we have debated the question in our mind at no little length. We look upon Mr. Spencer as a servant of the deceased; for the whole evidence has shown that he has been a most faithful one; and the conclusion to which we have arrived is, that reason and justice demand that his wages for the short period of three months should be paid in full. We find authority for this in the common law, where it is said, "Among simple contract debts," (and all the debts in this estate are reduced to that level,) *"servants' wages* are by some, with reason, prefered to any other; and so stood the ancient law, according to *Bracton* and *Fleta."* (Roll. Abr. 927, 2 Bl. ·Com. 511.) This provision is in our opinion as humane as it is equitable, when not carried to extremes. By no means, however, should we be willing to carry it to the extent of allowing administrators to pay such wages for a series of years anterior to the death of the employer; for in such a case the servant would be to blame for trusting his master so long, and not securing his pay before the decease, and perhaps even the wages for one year might be too much, but we fix no limit, for each case must obviously be governed by its own circumstances. Suffice it to say, for the present, that we think the charge of $231 48 in this case should be allowed.

The next point we propose to consider, is the motion made by counsel for the widow, that the sum of $185 for furniture, necessary domestic articles for family use, horse, etc., sold to Mrs. Vida by the administrators, may be allowed to her as a fair portion of the personal estate. The administrators express themselves willing and ready to account for this sum as assets in their hands, provided the court think she is not legally entitled to the articles. The widow is undoubtedly entitled to all her necessary wearing apparel, and our statute allows her to remain in the house of her husband sixty days after his death, without being chargeable with rent therefor, and in the meantime she shall have her reasonable sustenance out of his estate; but beyond this we cannot go. This claim has no foundation in the common law, and moreover, our statute forbids her having any portion of the personal estate, until after the payment of the just debts of her husband. (Stat. Laws, vol. 1, p. 59, sec 4.)

We now come to the question whether the administrators had a right to continue the business of Mr. Vida, keep open the store, and sell the goods at retail. The counsel on behalf of the creditors say they had not, but should have sold the goods at auction, without delay, and closed up the concern; and they therefore move, that the charge for expenses of carrying on the store from the 5th of Oct., 1851, to the 15th of March, 1852, be stricken out of the credit side of the administrators' account.

As a general rule, it is unwise for an administrator to carry on the business of the deceased, and unless he can show that such a course

was discreet and for the benefit of the estate, he might be liable for any loss accruing therefrom to creditors. But on the other hand, if great losses would result from ceasing to carry it on he would clearly be justified in continuing it, and possibly he might, in an extreme case, be liable to damages if he did not; for example, if a planter should die leaving a large crop of cane or coffee just ready for harvest, it would clearly be the duty of the administrator to gather and prepare it for market, and if he neglected so to do, he might be liable for wrong administration. However, in such a case even, it would be wise for him to seek the advice, and act under the order of the court.

It is a sound and well established doctrine, that executors and administrators, as well as all other trustees, are bound to use the same care and wisdom in managing the estate, that a prudent man would exercise in his own affairs; and therefore, if they squander or misapply the assets, or go on in the business of the deceased recklessly and foolishly, they will be liable to make good out of their own funds any losses that may result therefrom. Let us apply this rule to the case in hand. Soon after the decease of Mr. Vida, it appears that the administrators applied to Mr. Spencer, the right hand man of Mr. Vida during his life, and who was perfectly acquainted with the stock of goods belonging to the estate, to know his mind as to the propriety of carrying on the business or of closing up the whole concern by auction. Mr. Spencer advised them to continue the business for a season, which they did, and he swears that in his opinion the goods brought from 25 to 30 per cent. more at private, than they would have brought at public sale. From the testimony of Mr. Spencer, a witness distinguished and justly complimented on all sides, for his intelligence, honesty and strict impartiality, we are of the opinion that the administrators acted wisely in continuing the business. They acted in good faith, not for their own profit, but for the best interests of the estate, and should not suffer therefor. But though they are not liable for continuing the business for a season, yet there still remains the question whether they did not carry it on too long. We think they did; for Spencer testifies that he advised them to close the store the last of January or the beginning of February, 1852, as the business was not paying. Notwithstanding this advice, the business was continued until the 15th of March, and we are of the opinion that all expenses incurred for keeping open the store, and carrying on the trade, subsequent to the last day of January, should be disallowed.

In reference to the item of $200 paid Spencer for services in making up the administrators' account, etc., since closing the business by auction, we are of the opinion that it is not allowable.

It is said the administrators should be charged with the rent of the store after the last day of January; for it could have been rented for $100 per month. But there is no evidence to this effect, nor do we believe it would have been possible, good as the stand was, to have leased it for the two or three months that intervened between January and the day of sale. The premises were covered with mortgages, which were overdue, and the lessee would have been liable to be dispossessed at any moment. Again, it is a matter of history that business was never before so stagnant in the Sandwich Islands as at that

time, and premises of that kind were not in demand for so short a term.

After the store was finally closed, the balance of the stock on hand was sold at public auction, and there was paid to the auctioneer a commission of five per cent. on the sales. Counsel for creditors move that the autioneer's commission be reduced to two and a half per cent., on the ground that this is the customary charge of auctioneers for selling goods under like circumstances. We grant the motion; for from the evidence we believe it to be well grounded.

Finally we come to the question involved in the settlement made by the administrators with Wirt, Franconi & Co. It appears that Vida was one of the firm of Wirt, Franconi & Co., and that upon his decease the firm was indebted to him in the sum of about nine thousand dollars. The administrators being unable to get their pay, compromised the matter by taking all the goods and credits of Wirt, Franconi & Co., amounting to $11,639, and agreeing to pay their debts, which were about three thousand dollars. By this transaction they lost some six hundred dollars, and the learned counsel move that the loss be charged to the administrators, on the ground that administrators have no right to compromise a debt due the estate, submit the same to arbitration, or in any way settle it except by receiving it in full, or resorting to the courts. They say if administrators compound a debt, or submit the same to arbitration, and the arbitrators award them less than their due, this being their own voluntary act, shall bind them, and they shall answer for the full value. We know this is the doctrine of the common law of England, but it is a harsh one, and has never been adopted here. To say that administrators have no discretion in such matters, that they may not compromise with debtors when it is clearly for the interest of the estate to do so, that they can never safely arbitrate a disputed claim, but must plunge into a lawsuit, nolens volens, in every such case, is to our mind repugnant to reason, and shocking to common sense. The doctrine we have heretofore adopted, we believe to be the true one, namely, that executors and administrators may compromise a debt where it is clearly for the interest of the estate to do so, and may also arbitrate disputed claims, when they act with discretion and good faith. We would add, however, that we should consider it prudent to advise with the court in such cases, and if possible get its sanction.

From the evidence submitted on this point, we are clearly of the opinion that the administrators acted wisely in taking the stock and credits of Wirt, Franconi & Co., and we should be of the same mind even if they had lost half the debt. If ever there was a case in which a compromise was justifiable this is one. But say the learned counsel, granting it to be right for administrators to take the goods, etc., still it was not right in them to pay Franconi $750 for his services in settling up the business of the firm. We think otherwise. Franconi's pay for his services was a part of the compromise, and if the transaction is justifiable at all, must be in toto.

We have decided, we believe, all of the questions not decided in the course of the investigation, and now leave the account to be made up accordingly.