## SUPREME COURT—IN BANCO.

### JANUARY TERM—1877.

*Harris, Ch. J., Judd and Mc Cully, J. J.*

J. H. BRUNZ, PLAINTIFF, *vs.* HIS EX. J. MOTT SMITH, MIN-
ISTER OF INTERIOR, DEFENDANT.

THE Minister of the Interior may lawfully issue a royal patent for a
portion of a parcel of land granted by kuleana award, but it must
appear by the literal agreement of the metes, bounds and descrip-
tion of the survey of the portion applied for with that in the award,
that it is a portion of such award.

Royal patents based on awards do not confer or confirm title.

The opinion of the Court was given by McCULLY, J.

This case is submitted under the provisions of, the Civil
Code, on an agreed statement of which the following is the
substance.

"On the 6th September, A. D., 1854, the Board of Land
Commissioners issued an award by survey to one Honaunau,
of certain premises situate on the easterly angle of Nuuanu
and Beretania streets in Honolulu.

"No royal patent has been issued for the whole of said
award, but on the 29th January, 1854, a Royal Patent, No.
2398, was, in consideration of one hundred and twenty-five
dollars paid by H. Macfarlane as commutation, issued con-
firming the said award to a portion of the said premises, to
wit: to that portion thereof on the easterly angle of Nuuanu
and Beretania streets aforesaid, where the Commercial Hotel
is situated and including an area of 0.2205 of an acre. On
the 15th April, 1876, the plaintiff J. H. Brunz came into
possession, through the deed of Theodor Von Borstel, the
executor of the will of Mathilda Eckart, of a portion of the

said award, of which portion the metes and bounds are as follows:

"The said portion of the said award purchased and described as aforesaid has never been confirmed by royal patent, nor have the boundaries thereof been fixed by the Commissioner of boundaries.

"The Commissioners of Appraisement for the Island of Oahu have appraised the said portion according to the said survey.

"The said J. H. Brunz has applied to the said J. Mott Smith, Minister of Interior, as well as to his predecessor in office, for a royal patent confirming the said award for the said portion thereof in his possession as aforesaid, but they have refused to issue such royal patent, although the said J. H. Brunz stands ready to commute for the government rights therein according to the said appraisement.

"Wherefore, we the said parties, pray this honorable Court to adjudge and determine between them."

Counsel for the plaintiff cites Section 43 of the Civil Code, which is as it is the basis of his argument, we quote: "Section 43. A royal patent signed by the King and countersigned by the Kuhina Nui and the Minister of the Interior, shall issue under the great seal of the kingdom, to the purchaser in fee simple of any government land or other real estate; and also to any holder of an award from the Board of Commissioners to quiet land titles for any land in which he may have commuted the government rights."

He claims that the case at bar does not come within the provisions of the several Acts of 1862, 1868 and 1872, which establish the Boundary Commission and define its jurisdiction, inasmuch as they relate to the settlement of boundaries of lands awarded by name only and without survey, the Act of 1872 which authorizes the Minister of the Interior to issue patents for "portions of Ahupuaas, Ilis or other denominations of land" when defined by a Boundary Commission, not

applying to parts of lots awarded by surveyed boundaries; and that not coming within these modifications of Section 43, the owner of a fractional award must be entitled by that section, on payment of his appraised commutation, to receive a royal patent for such part; that otherwise he must pay the commutation for the whole award, without power to recover contribution from the other owners, or else continue to hold his land subject to the government's interest therein, and that either of these alternatives is an injustice which cannot be intended by the statute.

*Per contra,* it was said that the Minister has no power in the issuing of patents beyond the express and strict provisions of the law, and that should he exceed them the patent would be invalid; that if the case at bar is not thus provided for, parties must seek relief in the enactment of a new statute.

The award to Honaunau is in the Hawaiian language, of the form used in such grants, and may be rendered as follows:

"The petitioner makes claim for his house-lot, situated in Honolulu, Island of Oahu, on the ground that he received it from Kamehameha III., in 1835, and has since then held peaceable possession. We award accordingly to Honaunau an interest (kuleana) less than allodial. He is to pay the costs of this proceeding, being $3.00, and upon payment to the government of its one-fourth interest, shall be entitled to a royal patent in fee simple." A survey by metes and bounds follows.

Thus there was confirmed to Honaunau both an interest, one-fourth less than allodial, and a right to commute this into an absolute title, and it has never been doubted that these pass to his heirs and assigns, as vested rights, recognized but not conferred by Section 43. The sole question at issue is this; can the owner of a portion of an award claim and may the Minister lawfully issue, on payment of proportional commutation, a patent for such portion, or is the right and duty confined to patents for entire awards?

99

In aid of the construction to be given we cite from the " Principles adopted by the Board of Commissioners to Quiet Land Titles," which were approved by an Act of the Legislative Council, October 26th, 1846. They say: " The Hawaiian rulers have learned by experience that regard must be had to the immutable law of property in things real, as lands, and in things personal, as chattels; that the well being of their country must essentially depend upon the proper development of their internal resources of which land is the principal, and that in order to its proper cultivation and improvement the holder must have some stake in it more solid than the bare permission to evolve his daily bread from an article to which he and his children can lay no intrinsic claim." They recognize " the permanent good of the subject." " The Commissioners must infer that His Majesty intended the utmost liberality to prevail towards the claimants, rather against the interests of the body politic, than against those of the claimants." Statute Laws, 1847, pp. 86 and 90. Such being the spirit and the controlling principles at the foundation of these grants, if " that must be the truest exposition of a law which harmonizes with its design, its objects, and its general structure," Vattell, as quoted in Dwarris on Statutes, p. 178, we may well construe the provision in the award and the corresponding statute, favorably to securing " permanent " titles.

It must have been contemplated that the original parcels of land would in no long time be subject to division by partition among heirs, and by sales, which for the first time in Hawaiian history a common man had the power to make, and we can hardly suppose that it was meant that the right to acquire complete title should depend in its exercise upon the concurrence of other owners in the same tract, for the condition which would often practically destroy the right. It is likewise to be observed that there is no negative limitation in the statute, so that while it is not expressed that patents

may issue to part owners it is not expressed that they shall be only for entire awards.

We are aware that until recent years many patents were issued for part awards; indeed, as it appears by the submission, a patent has been granted for another piece of this Honaunau tract, but we can readily surmise reasons why the Minister now doubts his authority to repeat such and awaits judicial direction. He may apprehend conflict in the Crown grants when issued with boundaries not precisely and totally corresponding with those in the award, nor yet certified judicially by a Boundary Commission, with the liability of granting what is not included in the award, and he might aprrehend that private rights may be brought into litigation by his *ex parte* action in furnishing a royal patent to be the almost impregnable basis of a conflicting title.

The Act of 1872, entitled "An Act to Regulate the Issuing of Royal Patents," modifies the doctrine of this Court in Davis *vs.* Brewer, January, 1871, and, in our view, goes far to remove the practical difficulties of the case. Section 1st reads as follows: "Every royal patent hereafter issued upon an award of the Board of Commissioners to Quiet Land Titles, shall be in the name of the person to whom the original award was made, even . though such person be deceased or the title to the real estate thereby granted have been alienated; and all royal patents so issued shall inure to the benefit of the heirs and assigns of the holder of such original award."

Patents based on awards do not therefore confer or confirm titles. The name of the holder of the award who applies and pays the commutation, if he is other than the original grantee, does not appear in it. The title of every holder or part holder is left to be derived from the "person to whom the original award was made." The new grant from the government of fee simple goes back to the date of the award and attaches to the subsequent transfers. It may be com-

pared with the doctrine of estoppel against a warrantor subsequently acquiring title in the premises he has conveyed, his better title inuring in favor of the covenantee. Here the statute creates such an estoppel without special covenant in the conveyance, and the effect of the patent is to relinquish the government's interest in the area described therein unto the original awardee, be the same more or less in extent than any section which has been alienated; it grants nothing to subsequent holders, other than as they derive through the first, and such patents are therefore entirely inconclusive as to rights between part holders. It does not appear why a patent may not issue for the whole of an award on application and payment of the commutation by the owner of any part therein, nor why the holder of an entire award may not commute and patent a part thereof.

But where application is made for a patent with a description other than that containing an entire award, and not defined by a Boundary Commissioner, the Minister of the Interior cannot act judicially to determine if the lot applied for is in fact comprised within such award. It must appear by the literal agreement of the metes, bounds and description of the survey in the petition with that in the award, so far forth as the lot in question is bounded by the exterior lines of the award, that it conforms thereto and lies not outside the original award. It will not be legal for the Minister to proceed on what may be claimed to be, and perhaps be in fact, a rectified and improved survey made with greater accuracy and more perfect correspondence with conterminous lots. He may not act upon a survey in the English language if the original was in Hawaiian, and *vice versa,* upon one in the denomination of feet when the original was in chains and links, nor if the area in the one is expressed in a different notation from the other, nor can he judge if there should be an allowance for a different variation of the compass existing at the present time. But this rule of literal conformity does

not preclude him from taking a part of an original course or courses when the division requires it. The initial point however must be recognizable as in an original course or at an original angle, and the lines must follow the same until section is made.

Upon comparing the survey in this case presented for patent, with the survey in the award, it will be seen that upon the principles of this decision no patent can be issued, for its identity as a section of the Honaunau award is not an apparent identity.

S. B. Dole for plaintiff.

Attorney General Hartwell for defendant.

Honolulu, March 9th, 1877.