Syllabus.

## TERRITORY OF HAWAII, BY C. T. BAILEY, COMMISSIONER OF PUBLIC LANDS OF THE TERRITORY OF HAWAII, *v.* FRANCIS GAY, AUBREY ROBINSON, ALICE ROBINSON, SINCLAIR ROBINSON, AND AYLMER F. ROBINSON, COPARTNERS DOING BUSINESS UNDER THE NAME OF GAY & ROBINSON.

### No. 1361.

ERROR TO CIRCUIT COURT FIFTH CIRCUIT.
HON. W. C. ACHI, JR., JUDGE.

ARGUED APRIL 25, 26, 27, 28, 1922.                DECIDED MAY 22, 1922.

PETERS, C. J., EDINGS, J., AND CIRCUIT JUDGE DEBOLT
· IN PLACE OF PERRY, J., DISQUALIFIED.

APPEAL AND ERROR—*review—findings.*

Findings of fact by the trial court, jury-waived, will not be disturbed when supported by more than a scintilla of evidence.

SAME—*same—writ of error—same.*

Findings of fact by the trial court depending on the credibility of witnesses or the weight of evidence will not be disturbed by this court upon review by writ of error.

SAME—*same—same—same.*

The findings by the trial court upon the subject-matter of a grant and the identity of the grantee when supported by more than a scintilla of the evidence will not be disturbed by this court upon review by writ of error.

CROWN LANDS.

Acts of private parties cannot convert government land into crown land.

PUBLIC LAND—*patent valid on its face.*

Where a patent valid on its face is claimed to be void on the ground that the land therein described is crown land and the claim is not sustained the patent will be considered conclusive

evidence of the due compliance with all prerequisites to its issuance and valid.

MINISTER OF THE INTERIOR—*authority to settle "rights" of konohiki.*

Section 7 of the joint resolution of November 7, 1846, did not authorize the minister of the interior with the approval of His Majesty in privy council to settle any "rights" of a konohiki except such as had theretofore been quieted by award of the land commission.

## OPINION OF THE COURT BY PETERS, C. J.

This case comes to this court upon writ of error to the circuit court of the fifth circuit to review the judgment of that court, jury waived, in favor of defendants in error (hereinafter referred to as defendants). It was previously before this court upon reserved questions raised by defendants' demurrer to plaintiff's traverse to defendants' plea in bar. (See 25 Haw. 651.) Upon decision by this court on the reserved questions and remand to the trial court the defendants' demurrer was overruled, whereupon they filed a rejoinder to said traverse; the plaintiff in error (hereinafter referred to as plaintiff) in turn filed a replication to such rejoinder and the cause proceeded to trial upon the issues raised by the plea in bar and the answer of defendants theretofore filed.

It is apparent from a reading of the opinion of this court upon the reserved questions and the subsequent pleadings in the trial court on the plea in bar after the cause was remanded by this court that plaintiff's right to recover depended on its ability upon the trial to sustain its claims that the land in dispute on June 16, 1862, when Mahele Award No. 55, purporting to award one-half of the Ili of Koula, was granted to Paniani, upon which on October 30, 1877, R. P. 6998 was issued and from which defendants deraign their title, was in fact a part of the Ahupuaa of Hanapepe and not a part of the Ili of Koula and hence crown land, and that the whole of the Ili of

Koula had previously on May 30, 1853, been conveyed by the government by R. P. (Grant) No. 1108 to Paniani, but if less than the whole of the Ili of Koula was in fact conveyed by said grant the remaining unconveyed portion of said ili became as a matter of law a part of the Ahupuaa of Hanapepe, in which it was situate, because both the government in the issuance of said grant, and Paniani or his heir, in accepting the same, respectively intended and understood that said grant conveyed the whole of said ili.

There was no dispute and the trial court found (we have adopted herein the same numbering as appended by the trial court to its findings): "(1) That the Ahupuaa of Hanapepe on the Island of Kauai was assigned to the King and by the act of June 7, 1848 (R. L. 1905, pp. 1197, 1201), became crown land * * *. (2) That on the 1st day of February, 1848, there was a 'mahele' or division of the Ili of Koula between one Paniani and Kamehameha III, under which 'mahele' or division, one-half of said Ili of Koula was set apart for Kamehameha III and one-half of said ili was set apart for said Paniani, the said Paniani being thereby authorized to present his claim to the said one-half of the ili to the commissioners appointed under the provisions of the act of the 10th day of December, 1845 * * *. (3) That on the 3d day of February, 1848, the said Paniani filed his petition with the commissioners aforesaid for the award to him, the said Paniani, of one-half of the said Ili of Koula, the said petition being numbered 5345; that no award was made as prayed for in said petition * * *. (4) That thereafter Kamehameha III transferred to the chiefs and people the said one-half of the Ili of Koula so 'maheled' or set apart to him as aforesaid, the said transfer to the chiefs and people being accepted and adopted by the legislature of the Kingdom of Hawaii by said act of the 7th day of June,

1848, and said half of said Ili thereby became government land and subject to disposition by the minister of the interior with the approval of the Privy Council. (5) That on the 11th day of February, 1850, at a meeting of the Privy Council said council considered the application of the said Paniani for the purchase of the government's one-half of the Ili of Koula and the settlement of the government's commutation in his half and the said Privy Council at its meeting so held as aforesaid favorably acted upon said application." "(7) That Paniani died some time between February 11, 1850, and October 17, 1851, leaving surviving him his widow, Waialoe Paniani, and a daughter, Kaenaku * * *." "(12) That thereafter and on to wit the 30th day of May, 1853, * * * Royal Patent Grant 1108 was issued * * *." "(15) That on the 16th day of June, 1862, Mahele Award 55 was * * * issued by the Minister of the Interior of the Hawaiian Government * * *." "(17) That on or about the 30th day of October, 1877, Royal Patent 6998 * * * issued * * *." "(20) * * * that whatever title Elizabeth Sinclair acquired by her deed from Kaenaku and her husband is now vested in the defendants."

Upon the disputed questions of fact the court found: "(1) * * * that the upper or northerly portion of the ahupuaa (of Hanapepe) (the parentheses found in the findings are ours) is comprised of two valleys, called respectively Manuwahi and Koula, which extend up into the mountainous part of the Island. Those two valleys comprise the Ilis of Manuwahi and Koula, the latter, except the portion covered by Royal Patent Grant 1108, being the land in dispute in this case. (2) The ancient boundaries of the ili (of Koula) are set forth in Royal Patent 6998 and include the land in dispute. (3) * * * that no award was made as prayed for in said petition (Paniani's petition before the land commission) and no

appeal to the supreme court * * * was taken from said
failure to so award." "(6) That thereafter and on
to wit the 6th day of March, 1850, the Minister of the
Interior notified the said Paniani that the government
agreed to sell to him the government's half of the Ili of
Koula but made no reference to the settlement of the
commutation in Paniani's half of said Ili, as appears in
exhibit 'G' attached to plaintiff's traverse." "(8) That on
the 3rd day of October, 1851, W. H. Pease, a surveyor,
addressed a letter concerning Koula and other lands to
His Highness, John Young, Minister of the Interior, as
shown by exhibit 'H' attached to the said traverse, in
which the writer stated among other things, that he hesi-
tated to go around the Ili of Koula because it contained
several hundred acres more than he thought the native
could pay for.    (9) That on the 17th day of October,
1851, a survey of a portion of the Ili of Koula was made
by said W. H. Pease, who filed with the Minister of the
Interior the said survey, describing the said portion of
Koula by metes and bounds, and attaching to said survey
a map or plan thereof; that copies of the said survey
and plan, together with a copy of the letter of said Pease
transmitting the same to the Minister of the Interior, are
attached to said traverse marked respectively exhibits 'I'
and 'J.'    (10) That thereafter, and on to wit, the 16th
day of April, 1853, Waialoe Paniani, widow of the said
Paniani, deceased, addressed a letter to His Highness
John Young, Minister of the Interior, stating that she
and her daughter, Kaenaku, intended to annul the so-
called purchase made by her husband, Paniani, deceased,
of one-half of the Ili of Koula as aforesaid.    (11) That
at a meeting of the Privy Council held on the 25th day
of April, 1853, it was resolved that the request of Waialoe
Paniani in her letter to the Minister of the Interior of
April 16th, that the sale of one-half of Koula in Hana-

pepe, Kauai, to her late husband be declared null and void and the land revert to the government, be granted. (12) That thereafter and on to wit the 30th day of May, 1853, at a meeting of the Privy Council it was resolved that the resolution of the Council of April 25, 1853, in relation to the land of Paniani in Koula, Hanapepe, Kauai, be annulled, and on the same date Royal Patent Grant 1108 was issued, as shown by exhibits 'O' and 'P' attached to said traverse. Kaenaku was not a party to that transaction. (13) That it was the intention of Waialoe Paniani to purchase, and of the government to sell and convey, by said grant only the government's half of said Ili of Koula is shown by exhibits 'F,' 'G,' 'K,' 'L' and 'M' attached to said traverse, and that said Grant 1108 was not intended, and did not purport, to convey the whole of the Ili of Koula according to its ancient boundaries is shown by exhibits 'I' and 'J' attached to said traverse and the terms of the grant itself show that it did not convey the whole ili. Nor did it constitute a settlement or determination of the boundaries of the ili as including a less area than the ancient boundaries. (14) There is no evidence tending to show that Kaenaku ever waived, released, surrendered or forfeited her right, as the heir of Paniani, to receive a mahele award of one-half of the Ili of Koula." "(19) That the negotiations with the Privy Council, commenced by Paniani, terminated with his death. Paniani having died the purchase of the government's half of Koula was finally made by Waialoe by Grant 1108 * * *."

Upon these findings of fact the court found certain conclusions of law: "3. That no award having been made as prayed for in Paniani's petition before the land commission * * * no appeal to the supreme court could have been * * * taken * * *." 4. That Kaenaku was Paniani's heir. "15. That on the 16th day of June,

1862, Mahele Award 55 was duly and legally issued by the Minister of the Interior of the Hawaiian Government pursuant to the authority given him by the act of August 24th, 1860, Revised Laws 1905, page 1192, all the prerequisites thereto having been fulfilled. The award, which was properly in the name of Paniani, accrued to the benefit of his heir, Kaenaku, and passed the legal title to the one-half of the Ili of Koula which had been set apart to Paniani by the mahele of February 1st, 1848, a certified copy of the award with a translation being in evidence marked Exhibit 1." "16. That by deed dated July 7th, 1865, which was duly recorded in the registry of conveyances on August 29th, 1865, in book 20, page 121, Kaenaku, the daughter and heir of Paniani, and her husband, conveyed to Elizabeth Sinclair all of the Ili of Koula, as mentioned or described in Royal Patent Grant 1108 and Mahele Award 55, a certified copy of said deed with a translation being on file marked Exhibit 2." ."17. That upon the date stated * * * R. P. 6998 was duly and legally issued. * * *" "18. That the Ili of Koula, though situated within the Ahupuaa of Hanapepe, was never a part of the Ahupuaa." "19. * * * in the meantime Paniani's interest in the half of the Ili which had been maheled to him in 1848 had been inherited by Kaenaku, his heir, who alone had the right to apply for and receive an award thereon, and the government could not have sold any part or interest in that half of the ili by said grant." "21. * * * the plaintiff failing to prove that the land in dispute was, at the date of the issuance of the patent, crown land, as I find it has so failed, Royal Patent 6998 is conclusive; that, is to say, it is conclusive evidence that all prerequisites to its legal issuance and validity had been complied with, and is a bar to this action."

Plaintiff has grouped its assignments of error under

eight separate heads which correctly summarize its contentions. These will be discussed in the order in which they appear in its brief.

"I. R. P. (Grant) 1108 was intended by the government, and accepted by Paniani and his heirs, as a conveyance of the whole of the Ili of Koula and forever settled the rights of the parties." (Assignments Nos. VII, IX, XI, XIII and XVI.) Assignments VII and IX allege as errors the findings of the trial court upon the status of the lands in dispute at the time of the issuance of Grant 1108 and are covered by the trial court's findings of fact Nos. 1 and 9, respectively; assignment XI alleges error in finding 13 as to the intention of the parties to Grant 1108 and assignments XIII and XVI allege error in findings 15 and 18, respectively, in respect to the legal effect of the findings of fact referred to.

At the outset it is to be observed that the rights of the respective parties depend primarily upon the facts. There is little dispute as to the law involved. The trial court found what it believed the facts to be. However we might differ from those findings; whatever might be our opinion upon the credibility of the witnesses or the weight of the evidence, so long as the findings have more than a scintilla of evidence to support them they are binding upon this court on this appeal. Consequently, we are concerned only with the application of the law involved to the facts found and not to the credibility of witnesses nor whether the judgment is against the weight of the evidence. The rule that findings of fact by the trial court, jury waived, are binding upon this court if supported by more than a scintilla of evidence is too firmly established in this jurisdiction to require citation of authority. Moreover, on writ of error there can be no reversal of any finding depending upon the credibility of witnesses or the weight of evidence. Sec.

2522 R. L. 1915 as amended by Act 44 S. L. 1919; *Re Title of Kioloku,* 25 Haw. 357, 364.

Assignments of error Nos. VII, IX and XI will be discussed together. That the land in dispute, while situate within the Ahupuaa of Hanapepe, was never in fact a part of the ahupuaa but was a part of the Ili of Koula and with the portion thereof covered by R. P. (Grant) 1108 comprised the ili according to its ancient boundaries, is so overwhelmingly supported by the evidence that it hardly requires discussion. Kamaaina evidence was adduced upon the trial tending to show that the land described in R. P. 6998 comprised the Ili of Koula as known by its ancient boundaries. Learned counsel for plaintiff agreed that in the event that the trial court held the evidence of the ancient boundaries of the Ili of Koula was admissible the plaintiff would admit that such boundaries were as testified to and as set forth in R. P. 6998. The court held the evidence admissible and its ruling in that regard was correct. G. F. Wright, a surveyor, whose qualifications were admitted by the Territory, testified that the Ili of Koula is divided into two parts,—Grant 1108 representing the government's half sold to Paniani, and Mahele Award 55 representing Paniani's share; that R. P. 6998 covers the whole of the Ili of Koula, such patents always including titles within the boundaries described. The same witness identified, and there was admitted in evidence, a map prepared by him whereon was delineated the premises involved, those described in R. P. (Grant) 1108; those described in the certificate of Duncan McBryde, the boundary commissioner of the Island of Kauai; those described in R. P. 6998, and those in dispute. He further testified that the actual area of the land described in Grant 1108 is 620 acres; that the area of Koula outside of Grant 1108 is about 4900 acres, and that the Ilis of

Koula and Manuwahi comprise the greater portion of the land within the Ahupuaa of Hanapepe and all of the upper part of the ahupuaa.

One-half of Koula on February 1, 1848, was maheled to Paniani. The remaining one-half vested in the government pursuant to the provisions of the act of June 7, 1848. Paniani on February 3, 1848, made an application to the commission to quiet land titles for an award of the one-half so maheled to him. The land commission continued in session until March 31, 1855. It was in session at the time of Paniani's death. Upon her father's death Kaenaku as his heir had the sole vested right to prosecute her father's application before the land commission, or, conceding for the time being that the mahele to her father conferred "rights" upon him, which after his death vested in her, to apply to the minister of the interior under the provisions of section 7 of the joint resolution of November 7, 1846, and have such one-half set off to her according to such "rights" that she might procure an allodial title therefor. The land commission never acted upon the application made by Paniani. There is no evidence of any application made by Kaenaku to the land commission to have an award issued. There is no evidence that she at any time applied to the minister of the interior to have a portion of the Ili of Koula set off to her according to her "rights" in the same that she might procure an allodial title therefor. She was not a party to the negotiations culminating in R. P. (Grant) 1108. Paniani had some time between February 3 and February 11, 1848, made application to the minister of the interior for the purchase of the government's half and the settlement of the government's commutation in his one-half, the latter being made no doubt in the hope of the early favorable action by the land commission upon his application for an award on his half. But the notice

from the interior department informing Paniani of its action in that behalf referred only to the sale of the government's half. Pease's letter of October 3, 1851, tends to show that his survey of Koula described as 740 acres covered less than the total area. Pease's survey of Manuwahi indicates that the Ili of Koula extended far mauka of his alleged survey of Koula. The letter of Waialoe Paniani of April 16, 1853, shows that her husband had been negotiating for the government's half of Koula. Pease's notes of survey do not purport to describe the whole of the ili. Grant 1108 does not purport to convey the whole of the Ili of Koula but only a certain piece of land and shows on its face to be a sale of land for a consideration and not a quitclaim in confirmation of an award. The evidence of the ancient boundaries of the Ili of Koula shows that the ili extended beyond the boundaries of the premises described in Grant 1108 and its ancient boundaries were coextensive with the boundaries of the land described in R. P. 6998.

That the government was dealing with only its one-half of Koula is clear. And in the absence of any showing of fraud it is to be presumed that the government did exactly what it intended to do. It is equally clear that Waialoe Paniani understood that the negotiations covered only the government's one-half. Not only was the finding supported by the evidence but we fail to see how the trial court could have come to any different conclusion.

As to assignments of error XIII and XVI. The court by its findings identified by ascertained boundaries the area and extent of the Ili of Koula; determined the subject-matter of the negotiations between the minister of the interior and Waialoe Paniani to be the government's half of the ili; decided that the government by Grant

1108 intended, and Waialoe in accepting the grant
understood, that the government's half only was being
conveyed. Under that state of the case it inevitably
follows as a matter of law that the Ili of Koula though
situate within the Ahupuaa of Hanapepe was never a
part of the ahupuaa, and that Mahele Award 55 was
duly and legally issued by the minister of the interior of
the Hawaiian government pursuant to the authority
vested in him by the act of August 24, 1860, all the pre-
requisites thereto having been fulfilled. The award was
properly in the name of Paniani and accrued to the
benefit of his heir Kaenaku and passed the legal title
to the one-half of the Ili of Koula which had been set
apart to Paniani in the mahele of February 1, 1848.

Other phases of these findings and the law involved
will be further enlarged upon in the discussion of other
assignments.

"II. Kaenaku, daughter and heir of Paniani, took
title to the land described in R. P. (Grant) 1108 and to
no part of the Ahupuaa of Hanapepe." (Assignments of
error Nos. X, XII and XIV.) Assignment X refers to
the trial court's finding of fact covered by paragraph 12
to the effect that Kaenaku was not a party to the action
of the privy council of May 30, 1853, nor to the issuance
of R. P. (Grant) 1108; assignment XII refers to para-
graph 14 of the trial court's findings on the failure of
the Territory to show that Kaenaku had waived, etc., or
forfeited her right as the heir of Paniani to receive
Mahele Award 55, and assignment XIV refers to finding
16 as to the legal effect of the deed of Kaenaku and
husband to Elizabeth Sinclair.

Assignments X and XII will be considered together.
Counsel's contention is a little awkwardly stated but
evolves from the theory of the Territory that Grant 1108
settled the rights of the respective parties and hence

the remainder of the Ili of Koula, if less than the whole was conveyed by Grant 1108, became a part of the Ahupuaa of Hanapepe. This court so held in effect upon the reserved questions. Whether this court was correct in holding that:

"If a konohiki who had by the mahele been given an undivided one-half interest in an ili settled the government's commutation in his half and at the same time purchased the government's half and accepted a patent for the whole ili in which the land was described by metes and bounds as ascertained by a survey made for the purpose of carrying out his transaction with the government we do not think he could afterwards be heard to say that the description did not embrace the whole of the land. This last is what the plaintiff says in his traverse was done as to the ili of Koula; that is, that Paniani settled the government's commutation in his half and purchased the government's half, the government issuing to him a patent by surveyed description for the whole of the said ili."

we are not now concerned. The trial court found the facts to the contrary and these findings are amply sustained by the evidence. To the conclusion:

"If this is true, and on demurrer the allegations are accepted as true, the whole of the Ili of Koula was included in Royal Patent 1108 and the area and extent of said ili was officially determined by said survey and patent. All of the land within the boundaries of the ahupuaa not now included within some ili or kuleana is a part of the ahupuaa and when the boundaries of the ilis and kuleanas within the ahupuaa have been officially and finally determined the remainder of the land within the boundaries of the ahupuaa is part of the ahupuaa regardless of what may have theretofore been claimed as to the ancient boundaries of the lesser tracts within it,"

we cannot now subscribe. The mere act of the parties cannot change the legal status of unassigned public lands. Nothing that Paniani or his heir might do could change

into crown land what admittedly was originally govern-
ment land. Whatever remained of the Ili of Koula after
the issuance of Grant 1108 was still a part of the ili and
maintained the same status which obtained prior to its
issuance. No fiction of the law of estoppel could change
it into crown land. The only lands reserved to the
crown were those specifically mentioned in the act of
June 7th, 1848. The Ili of Koula is not there mentioned.
On the contrary it became government land subject to
disposition the same as any other government land.

The plaintiff failed to sustain its claim that by the is-
suance of Grant 1108 the rights of Paniani in the one-
half of Koula maheled to him were settled and de-
termined. The trial court found to the contrary. With
the failure of the plaintiff to sustain its claim the theory
of the change in status from an unassigned portion of
the Ili of Koula to a portion of the Ahupuaa of Hana-
pepe falls to the ground. And Kaenaku, if a stranger
to the negotiations that culminated in the issuance of
R. P. (Grant) 1108, was not estopped by anything that
occurred on those negotiations. The court found that she
was not a party to the negotiations that culminated in
the issuance of R. P. (Grant) 1108 and learned counsel
for plaintiff has failed to point out any evidence that
even inclines in that direction. On the contrary the
evidence shows that her mother and her mother alone,
after Paniani's death, was the only one that dealt with
the government. Nor has the plaintiff pointed out how
Kaenaku in any way waived, released or surrendered her
right to receive a mahele award of one-half of the Ili of
Koula by act of hers or by operation of law. The
burden rested upon the plaintiff to show these things
and it failed to sustain that burden.

It was incumbent upon the plaintiff to sustain the
allegations of its complaint, the particulars of which

are set out in the traverse to the plea in bar, by evidence clear, unequivocal and convincing and leave no issue to doubt or conjecture. All presumptions are in favor of an award. The conclusiveness of awards of the land commission has repeatedly been upheld by this court. *Kukiiahu* v. *Gill,* 1 Haw. 91; *Kaai* v. *Mahuka,* 5 Haw. 354, 356; *Atcherley* v. *Lewers & Cooke,* 18 Haw. 625, 635, affirmed in 222 U. S. 285-294.

The award of the minister of the interior under the Konohiki Act of August 24, 1860, is entitled to equal weight. "In this class of cases, the respect due to a patent, the presumptions that all the preceding steps required by the law had been observed before its issue, the immense importance and necessity of the stability of titles dependent upon these official instruments, demand that the effort to set them aside, to annul them, or to correct mistakes in them should only be successful when the allegations on which this is attempted are clearly stated and fully sustained by proof." *Maxwell Land-Grant Case,* 121 U. S. 325-381.

Moreover, the recognition of Mahele Award 55 by the commissioner of boundaries of the Island of Kauai upon the settlement of the boundaries of Koula and by the minister of the interior upon the issuance of R. P. 6998 raises a strong presumption in favor of the award. Public officers are presumed to act honestly. The presumption operates in favor of the regularity and validity of their official acts. "While acting within the scope of their official duties, upon any subject-matter over which they have control and are empowered to act, the presumption is that they do not exceed their authority. They are not presumed to disregard the law, or to exercise their power and authority in opposition to it, to act officially in a different mode from that prescribed." *Gillette-Herzog Mfg. Co.* v. *Board of Commissioners,* 69

Minn. 297-306.   See also *Holt* v. *Brodie,* 5 Haw. 662, 663; *Hogue* v. *Corbit,* 156 Ill. 540, 545; *Weyauwega* v. *Ayling,* 99 U. S. 112, 119; *Quinlan* v. *Green County,* 205 U. S. 410, 422.   Especially is this so where by lapse of time and death of witnesses evidence of all the facts is not available.

Assignment IV.   What the deed of July 7, 1865, "conveyed" is a mixed question of law and fact.   The execution of the deed is undisputed.   Its legal effect is sustained by the findings of fact upon which it is predicated.

"III.   Waialoe, wife of Paniani, did not purchase or acquire any interest in Koula other than her right of dower."   (Assignment of error No. XVII.)   This proposition involves the court's findings of fact and conclusions of law in paragraph 19.   First as to the facts.

The record shows that Waialoe Paniani subsequently to the death of her husband addressed the privy council; that her communication was referred to as "the letter of Paniani;" that the privy council used the name "Paniani" in connection with the personal pronoun "her;" that Waialoe after her husband's death carried on the negotiations; that her daughter took no part in the negotiations.   From the letter of Pease of October 17, 1851, it would also appear that the privy council was advised of Paniani's death.   In its minutes of April 25, 1853, it refers to the "late husband of Waialoe Paniani." Moreover it is unreasonable to suppose that the privy council with the knowledge of Paniani's decease before it would, in the absence of any enabling act authorizing it so to do, issue a grant to or in the name of a dead man. At common law a grant to a deceased person passed no estate to his heirs.   *Dougherty* v. *Edmiston,* 7 Fed. Cas. No. 4025.   No grant can take effect unless there be a sufficient grantee then in existence.   5 Enc. U. S. Rep. 255; 10 Enc. U. S. Rep. 118, 119; *Davenport* v. *Lamb,* 13

Wall. 418, 427; *Moffat* v. *United States,* 112 U. S. 24, 31; *De La Vergne* v. *Featherstone,* 49 Fed. 916; *Farrand* v. *Land Co.,* 86 Fed. 393, 397; *Morgan* v. *Hazelhurst Lodge,* 53 Miss. 665, 674; *Thomas* v. *Wyatt,* 25 Mo. 24, 26.

Plaintiff contends that *Smith* v. *Hamakua Mill Co.,* 15 Haw. 648, is authority in this jurisdiction for the issuance of a grant to an heir·in the name of an ancestor. That case held, however, that under the Konohiki's Act of 1860 mahele awards could be issued in the names of dead konohikis for the benefit of the heirs. But it was not until 1872 that any statutory authority existed for the issuance of patents and awards in the name of the awardee even though he be dead. Sec. 459 R. L. 1915; *Brunz* v. *Minister of the Interior,* 3 Haw. 783, 787. Neither of these statutes, however, authorized the issuance of grants in the names of deceased persons.

Nor had the negotiations which terminated at Paniani's death assumed the dignity of a contract between the government and Paniani capable of enforcement whether at the instance of the government or Paniani's heir or personal representative.

The reference to the dower interest of Waialoe Paniani is beside the point. A widow's interest in realty extends only to such of which the husband was owner during coverture. It does not accrue in lands by virtue of a mahele. The mahele of February 1, 1848, did not convey title.

As to the legal effect of these findings: Paniani having died, his negotiations with the privy council terminated. The court found that the subsequent negotiations were between the minister of the interior and his widow Waialoe and that the purchase of the government's half was made by Waialoe by grant 1108. That disposed of the government's one-half. Hence was vested in Kaenaku, as heir of her mother Waialoe, at the time of her conveyance to

Elizabeth Sinclair the one-half of Koula formerly owned by the government. On the other hand Kaenaku had as heir of Paniani succeeded to her father's right to proceed with his application for an award on the one-half of Koula maheled to him. Whatever the authority of the Minister of the Interior under the joint resolution of November 7, 1846, or otherwise, he could not dispose of the one-half maheled to Paniani without the consent of Kaenaku, express or implied, or her waiver, surrender or forfeiture of her rights therein.

"IV. Mahele Award No. 55 was issued in contravention of law and was void." (Assignments of error Nos. I to VI, both inclusive; XIII and XIV.)

The findings complained of involve the conclusions of law of the trial court upon the facts found. With these conclusions we concur.

Mahele Award 55 has ample authority for its issuance under the provisions of the Konohiki Act of August 24, 1860. The prerequisites (1) a mahele shown by the Mahele Book and (2) the failure of the land commission to issue an award upon it, are shown to have existed. By that act the right to present claims was extended to konohikis, their heirs, executors and administrators. Under the ruling of *Smith v. Hamakua Mill Co. (supra)* awards were properly issued to the heirs of deceased konohikis. Presumably Kaenaku pursuant to this act made a claim. The minister of the interior issued an award thereon. Whether or not she was destitute we are not now concerned. If being destitute was a prerequisite to her receiving an award we must presume that the minister of the interior so found and his finding is conclusive. The issuance of a grant is evidence that all conditions precedent have been fulfilled. *Minter* v. *Crommelin,* 18 How. 87, 89; *St. Louis Smelting Co.* v. *Kemp,* 104 U. S. 636, 646; *United States* v. *Marshall*

*Mining Co.,* 129 U. S. 579-589; *Burke* v. *S. P. R. R. Co.,* 234 U. S. 669, 691.

The award when issued accrued to the benefit of Kaenaku the sole heir of her father Paniani.

That the award described the land by name only does not avail the plaintiff. Section 4 of the Konohiki Act of 1860 provides that in mahele awards the land "may be described by survey or by natural boundaries" in accordance with the act of June 19, 1852. The provision is permissive. Section 1 of the act of June 19, 1852, obviously, if in force in June 1862, does not apply. In the first place it refers to awards by the land commission and in the second place it was not an undivided land because it had been previously divided by the Pease survey and the issuance of Grant 1108 dividing the government half from the half issued to Paniani. From an examination of the records of the public land office it appears that the minister of the interior followed the invariable practice (with but a single exception) of issuing a mahele award describing the land by name only.

The trial court having found that Grant 1108 conveyed, and was intended to convey, the government's one-half of the Ili of Koula and not the whole; that Waialoe Paniani was the purchaser; that the transaction was free from fraud and that Kaenaku had done nothing to waive, release, surrender or forfeit her rights as Paniani's heir, it inevitably follows as a matter of law that she was entitled to receive a mahele award upon her father's mahele of one-half of the Ili of Koula. An award by name covers all that is included within its ancient boundaries. *Boundaries of Pulehunui,* 4 Haw. 239; *Boundaries of Paunau,* 24 Haw. 546, 554.

The act of August 24, 1860, provided that mahele awards shall be equally valid with those of the land commission and the conclusiveness of awards of the land

commission has been repeatedly upheld by this court. *Kukiiahu* v. *Gill, supra; Kaai* v. *Mahuka, supra; Atcherley* v. *Lewers & Cooke, supra.*

"V. R. P. 6998 was issued in contravention of law and was void." (Assignments of error Nos. VIII, XV and XVIII.) Having determined that Mahele Award No. 55 was properly issued R. P. 6998 was properly issued upon payment of the government's commutation. It was issued on a certificate of boundaries of the boundary commissioner of the Island of Kauai and appears in all respects correct except the complaint is made that it includes the premises covered by R. P. (Grant) 1108. That is something, however, of which the government cannot complain. If this can be considered as an irregularity the defendants alone can complain. *Curtner* v. *United States,* 149 U. S. 662, 671; *United States* v. *Allen,* 171 Fed. 907, 912; *United States* v. *Conklin,* 177 Fed. 55-60.

"VI. The motion to strike the evidence relating to the ancient boundaries of Koula should have been granted." The motion to strike was properly denied. The issues involved a determination of the ancient boundaries of Koula and the acts of the government subsequent to the issuance of Grant 1108. The evidence was properly admitted.

"VII. The court erred in ordering judgment for defendants." (Assignment of error No. XX.)

"VIII. The court erred in entering judgment for defendants." (Assignment of error No. XXI.)

The assignments of error to the order for judgment and entry of judgment are disposed of by what has been said heretofore on the main issues.

In arriving at the foregoing conclusions we have conceded the correctness of the holding of this court upon the reserved questions to the effect that under the

26

provisions of section 7 of the joint resolution of November 7, 1846, upon the petition of a konohiki wishing to have his portion of any given ili set off to him according to his rights in the same that he may procure an allodial title therefor, "the minister of the interior was authorized upon the approbation of the King in privy council to complete arrangements for the same and give to the konohiki a patent for the same." The correctness of this holding is not vital to a determination of the issues involved. But we feel that we would not be doing our full duty were we to pass this holding unchallenged and allow it by lapse of time and concurrence by silence to become ingrafted upon the law of land titles in these Islands. We approach the subject with hesitancy and the sincere appreciation that the former decisions of this court should not be lightly set aside and then only for manifest error.

From an examination of the history of the legislation prior to, and attendant upon, the adoption of the joint resolution of June 7, 1846, recited in *Oni* v. *Meek*, 2 Haw. 87 at 92, and in *Estate of His Majesty Kamehameha IV*, 2 Haw. 715 at 721, it is clear that whatever expediency section 7 of the resolution was sought to effect at the time of its adoption, that upon the mahele of 1848 it became incumbent upon the konohiki whose "rights" had been recognized by the mahele of the King to present his mahele to the land commission *(Kenoa* v. *Meek*, 6 Haw. 67; *Kanaina* v. *Long*, 3 Haw. 335) to whom had been delegated the sole and exclusive executive and judicial powers of investigating, and by its award quieting, claims to land. *Thurston* v. *Bishop*, 7 Haw. 431; *Atcherley* v. *Lewers & Cooke*, 18 Haw. 639. The mahele of 1848 was in recognition of "rights." It created, however, no estate in lands. It was "evidence of title." "By the mahele His Majesty the King consented that Pahoe (the mahelee)

should have the land subject to the award of the land commission." *Kenoa* v. *Meek, supra.* "The statute therefore deprived Lot Kamehameha (on his failure to present his claim to the commission) of what? Not of this land, for he had no title to it, but only of his right to present a claim for it, which was all the interest he had." *Thurston* v. *Bishop,* 7 Haw. 433.

The joint resolution of November 7, 1846, must be interpreted in the light of the plain and unambiguous terms of the act creating the land commission which went into effect in February, 1846; the principles of the land commission adopted by the legislature in August of the same year, and the mahele itself, which was not finally undertaken and completed until February of 1848. To ascertain the law as it existed after the "mahele" it is necessary to examine and consider together the several enactments *in pari materia.* To appreciate the effect of that law we must also consider the conditions existing at that time and the objects and purposes which those laws were designed to accomplish. We cannot consider the situation as it existed in November, 1846, but must consider it from the standpoint of conditions as they existed in February, 1848, when the division was made.

Upon the mahele of February, 1848, and thereafter until its repeal the joint resolution of November 7, 1846, by section 7 thereof, operated only in respect to, and in settlement of, "rights" that had by the confirmation and award of the land commission become estates in land and provided the method of settlement in kind of the commutation due the government upon the issuance of a patent upon a land commission award. The reference in the section to the act of April 27, 1846, becomes directory merely and the general laws in respect to the issuance

of patents upon the settlement of the government's com-
mutation in lands apply.

Hence we unqualifiedly hold that the mahele to Pani-
ani of one-half of the Ili of Koula ripened into a
"right," as contemplated by the joint resolution of June
7, 1846, only upon an award by the land commission
and that it was not operative to authorize the minister
of the interior to convey an estate in lands but only to
settle by patent the government's commutation in kind
upon and after the issuance of an award and that it
was only upon the passage of the act of August, 1860, for
the relief of konohikis that the minister of the interior
had any authority in respect to land previously maheled
to konohikis, when there was conferred upon him author-
ity to issue awards upon maheles to konohikis who had
failed to receive the same from the land commission.

The judgment appealed from is affirmed.

*J. Lightfoot,* First Deputy Attorney General *(H. Irwin,*
Attorney General, with him on the brief), for plaintiff
in error.

*A. G. M. Robertson (Robertson & Castle* and *Perry &
Matthewman* on the brief) for defendants in error.